**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ZHEJIANG TOPOINT PHOTOVOLTAIC CO., LTD.,<br><br>Debtor. | Case No. 14-24549 (JNP)<br><br>Chapter 15 |
| ZHEJIANG TOPOINT PHOTOVOLTAIC CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>ZHI CHEN and HENGHE NORTH AMERICAN, INC.,<br><br>Defendants. | Adv. Pro. No. 16-01873 |

## OPINION

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Topoint Photovoltaic Co., Ltd. ("Topoint"), filed an action for conversion, breach of fiduciary duty, and unjust enrichment against Zhi Chen ("Chen") and Henghe North America, Inc. ("Henghe" and, with Chen, the "Defendants"). Henghe filed a motion (the "Motion") seeking to amend its answer, and file counter claims and a third-party complaint against Solergy USA, LLC. ("Solergy"). Chen filed a similar motion, but the adversary proceeding was stayed as to Chen as a result of his bankruptcy case currently pending before Judge Ferguson and so is not part of this decision.[1] For the reasons discussed below, the Motion is granted, in part, and denied, in part.

---

[1] Chen received a discharge on August 23, 2022, subject to the outcome of a non-dischargeability complaint filed by Topoint, which is currently pending. Case No. 21-18989; Adv. No. 22-1060.

## Background

Topoint filed the original complaint (the "Initial Complaint") on December 9, 2016, and the Defendants filed a motion to dismiss (the "Motion to Dismiss") on January 11, 2017. Topoint filed the amended complaint (the "Complaint") on January 9, 2018. The Complaint is based on rights Solergy assigned to Topoint on December 8, 2014 (the "Assignment"), and alleges that Chen fraudulently induced Solergy and its president, Andy Fei ("Fei"), to sign contracts (the "Contracts") allowing Henghe to purchase and resell solar panels from Solergy, but that the Contracts were a sham allowing Henghe to convert and sell Solergy's solar panels. Dkt. No. 27 at 4. The Complaint brings claims for conversion and unjust enrichment against Henghe. Id. Henghe filed its answer (the "Answer") on May 7, 2019, which: (1) denies the Contracts were a sham; and (2) admits that it sent a letter to Topoint on October 29, 2014, advising of the breach of warranty and reserving the right to identify and pursue other events of default under the terms of the Contracts.[2] Dkt. No. 74 at 4. Hegnhe also raised twenty-seven affirmative defenses, including that Topoint's claims are barred due to: (14) breach of contract; (16) breach of warranty pursuant to the Contracts; (19) set-off and/or recoupment; and (21) beneficial transfer and unlawful assignment of interests or assets of Solergy. Id. at 7-8.

The Motion was filed on October 25, 2021. Dkt. No. 142. The proposed counterclaim and third-party complaint (the "Proposed Counterclaim") alleges that the Contracts were valid, and that Solergy breached them by delivering solar panels that did not meet specifications of the Contracts, because they did not have the proper certifications. Id. Further, the Proposed Counterclaim alleges that the Contracts had a hold harmless clause, requiring Solergy to indemnify Henghe for any "duties, claims, lawsuits, or litigation that may be claimed, incurred assessed, or which may arise, and which is related to [the panels] purchased by Henghe from Solergy." Id. The

---

[2] This letter was sent to Solergy's counsel on the same date. Dkt. No. 27.

Motion seeks to add the following claims and counterclaims: (1) declaratory judgment that the Contracts were valid; (2) breach of contract against Topoint and Solergy, including breach of warranty; (3) breach of implied covenant of good faith and fair dealing as to Topoint and Solergy; (4) fraudulent transfer as to Topoint and Solergy; and (5) contractual indemnification as to Topoint and Solergy. Id. Although not pled as an independent count, the Proposed Counterclaim seeks to hold Topoint liable for successor liability. Id.

Topoint's opposition (the "Opposition") argues that the Motion is futile because the claims are time barred, and fail to state a cause of action. Dkt. No. 152. Henghe's reply (the "Reply"), argues that the bar date was tolled by the filing of the Complaint, and the claims relate back to earlier pleadings. Dkt. No. 157. At a hearing on February 10, 2022 (the "Hearing") the Court requested additional briefing regarding whether: (1) a motion to dismiss can qualify as an "original pleading" under Rule 15(c) for relation back purposes; (2) in the event that its fraudulent transfer claim is time barred, Henghe is still able to make out a claim for successor liability premised on the transfer of the claim being fraudulent; and (3) Solergy can properly be added under Rule 15(c)(1)(C)(i) and (ii). Henghe conceded its Motion to Dismiss does not qualify as a pleading but argued that it nevertheless put all parties on notice of the substance of its claims. Dkt. Nos. 159, 162. Henghe did not address the second question but argued that Solergy has been on notice of these claims and therefore can be added under Rule 15(c). Id. Topoint argued that Henghe cannot make out a claim for successor liability without a claim for fraud, and that Solergy could not be added as a third-party defendant. Dkt. Nos. 160 and 161.

## Discussion

Federal Rule of Civil Procedure 15 ("Rule"), made applicable by Federal Rule of Bankruptcy Procedure 7015 ("Bankruptcy Rule"), governs amendments to pleadings. Rule 15(a) provides that granting a party's request for leave to amend its complaint is within the sound

discretion of the court. In re Mortg. Lenders Network, USA, Inc., 395 B.R. 871, 876 (Bankr. D. Del. 2008). Though granting such a request is within the discretion of the court, "courts have shown a strong liberality . . . in allowing amendments." Id. (quoting Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir.1984)). Rule 15(a) requires that leave to amend pleadings be granted freely "when justice so requires." Foman v. Davis, 371 U.S. 178, 182, (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)).

The Supreme Court laid out the standard for granting leave to amend in Foman:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - the leave sought should, as the rules require, be freely given.

Foman, 371 U.S. at 182 (emphasis added). See also Long, 393 F.3d at 400. In evaluating the Foman factors the Third Circuit has stated that "prejudice to the non-moving party is the touchstone for the denial of an amendment." In re Fleming Co's, Inc., 323 B.R. 144, 147 (Bankr. D. Del. 2005) (citing Lorenz v. CSX Corp., 1 F.3d 1406 (3d Cir.1993)). The issues of undue delay and undue prejudice overlap somewhat, as delay generally cannot be undue unless it has caused some prejudice to the non-moving party. Formosa Plastics Corp., U.S.A. v. ACE Am. Ins. Co., 259 F.R.D. 95, 99 (D.N.J. 2009) (citing Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir.1984)). The analyses, however, are distinct, as "[t]he question of undue delay . . . requires that we focus on the [movant's] motives for not amending their complaint to assert this claim earlier; [while] the issue of prejudice requires that we focus on the effect on the [nonmovants]." Id.

Topoint argues that the amendment: (a) is futile, (b) would unduly prejudice Topoint, and (c) was unduly delayed. In response, Henghe argues there is no undue prejudice because: the claims relate back to its original pleadings, and so are not time barred; the parties are still in discovery; and the issues all revolve around the same transactions and conduct.

In evaluating whether there is prejudice to the nonmovants, "courts consider whether permitting the amendment would (1) require [nonmovants] to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay resolution of the dispute; or (3) prevent a party from bringing a timely action in another jurisdiction. Id. (citing Long, 393 F.3d at 400). These factors "must materially impact the nonmoving party's case." Fleming, 323 B.R. at 147. Regarding delay, there is no presumptive period in which a motion for leave to amend is deemed "timely" or in which delay becomes "undue." Further, delay alone does not justify denying a motion to amend. Id. (citing Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001)). While a court should look to the moving party's reasons for not moving to amend sooner, unless the delay will prejudice the non-moving party, a movant need not establish a compelling reason for its delay. Id. (citing Astrazeneca AB v. Ranbaxy Pharm., Inc., 2008 WL 5272018, at *6 (D.N.J. Dec. 15, 2008)).

Here, there is no undue prejudice to Topoint in allowing the amendment. As noted, the parties are still in the discovery phase, so there is no undue prejudice on this basis alone. Further, discovery regarding the additional claims (with the exception of the fraudulent transfer claim) will revolve around the Contracts and the interactions between Solergy and Henghe, which is the same conduct upon which the claims in the Complaint rest. Finally, although waiting six years to bring these claims despite having full knowledge of them would appear to be "undue," the Third Circuit standard requires that the delay caused "undue prejudice."

The remaining question is whether the amendment is futile. "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. West v. Shultz, 2013 WL 5438297, at *3 (M.D. Pa. Sept. 27, 2013) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997)). In assessing "futility," the court applies the same standard of legal sufficiency as it applies under Rule 12(b)(6). In other words, "[a] claim is futile

if it would not survive a motion to dismiss under [Rule 12(b)(6)]." Sammons v. Philadelphia Gas Works, 2015 WL 1383581, at *1 (E.D. Pa. Mar. 20, 2015) (citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

Topoint argues the Proposed Counterclaim would not survive a motion to dismiss because the claims are time barred, duplicative, or otherwise inadequate. Dkt. No. 152. Henghe argues in response that the claims in the Proposed Counterclaim relate back to its original pleading, and so are not time barred. Therefore, the Court must determine whether the claims in the Proposed Counterclaim relate back.

A.    Statute of Limitations

As noted, the Proposed Counterclaim seeks to bring five counterclaims and third-party claims: declaratory judgment, breach of contract, breach of good faith, fraudulent transfer, and indemnification. Each of these actions would be brought under New Jersey state law, and both parties agree that New Jersey law governs. See Dkt. Nos. 152, 157. In New Jersey, breach of contract claims are governed by a six-year statute of limitations. N.J.S.A. 2A:14-1; Crest-Foam Corp. v. Aetna Ins. Co., 320 N.J. Super. 509, 517 (App. Div. 1999); Casey v. Selected Risks Ins. Co., 176 N.J. Super. 22, 28 (App. Div. 1980). Claims for indemnification which arise out of contract are therefore also governed by this six-year statute of limitations. See ACE Am. Ins. Co. v. Old Republic Gen. Ins. Corp., 2020 WL 40005, at *2 (N.J. Super. Ct. App. Div. Jan. 3, 2020). However, if the contract is governed by the Uniform Commercial Code, then a four-year statute of limitations applies under N.J.S.A. 12A:2–725. Docteroff v. Barra Corp. of Am., 282 N.J. Super. 230, 232 (App. Div. 1995).

Although actions for declaratory judgment generally do not have a prescribed statute of limitations, courts have typically applied the statute of limitations for the concurrent legal remedy. Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178, 181 (3d Cir. 1997); see also City

of E. Orange v. Livingston Twp., 27 N.J. Tax 161, 183 (2013) (applying the statute of limitations

for a taxpayer to challenge an assessment to an action seeking a declaration of property value);

ACE Am. Ins., 2020 WL 40005, at *2 (applying the six-year statute of limitations applicable to

contract claims to a claim for declaratory relief because that claim was seeking to enforce a clause

in a contract); Casey v. Selected Risks Ins. Co., 176 N.J. Super. 22, 28 (App. Div. 1980) (applying

a six-year statute of limitations to an action for declaratory relief because the court found the action

was one in contract).

Finally, a fraudulent transfer claim in New Jersey under N.J.S.A. 25:2-25 has a four-year

statute of limitations. N.J.S.A. 25:2-31; Intili v. DiGiorgio, 300 N.J. Super. 652, 661 (Ch. Div.

1997); New Jersey Dep't of Env't Prot. v. Caldeira, 338 N.J. Super. 203, 213 (App. Div. 2001).

Generally, the statute of limitations begins to run when the cause of action accrues,

meaning the date on which the right to file suit arose. ACE Am. Ins., 2020 WL 40005, at *2 (citing

Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 394 (2016)) (citing White v. Mattera, 175 N.J.

158, 164 (2003)). If a suit on a contract is based upon a breach of or nonperformance of the

contract, the cause of action accrues at the time of the breach or nonperformance, and not when

the damages actually result. Accrual of Cause of Action, 3 N.J. Prac., Civil Practice Forms § 5:8

(6th ed.). However, New Jersey has adopted the "discovery rule" which delays the accrual of a

cause of action until the injured party knows, or, with the exercise of reasonable diligence, could

have discovered the injury. Sodora v. Sodora, 338 N.J. Super. 308, 313 (Ch. Div. 2000) (citing

Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973)). The doctrine is applicable, under appropriate

circumstances, to contract actions. Id. (citing County of Morris v. Fauver, 153 N.J. 80 (1998)). For

claims under the Uniform Fraudulent Transfer Act (UFTA) in New Jersey, as Henghe brings here,

the statute of limitations begins to run on the date the transfer is made.[3] SASCO 1997 NI, LLC v. Zudkewich, 166 N.J. 579, 586 (2001) (citing N.J.S.A. 25:2–31a).

None of the parties dispute that it has been more than six years since the claims for breach of contract and fraudulent transfer have accrued. However, Henghe argues that the applicable statutes of limitations have not expired because they were tolled or the claims relate back to the filing of its Answer. Dkt. No. 157. Therefore, the Court must determine whether tolling or relation back doctrines apply to the proposed claims brought by Henghe making them allowable claims.

### 1.    Tolling

"Courts have held that the filing of a complaint tolls the statute of limitations for a compulsory counterclaim so long as that counterclaim is timely asserted."[4] Bibb Cnty. Sch. Dist. v. Dallemand, 2019 U.S. Dist. LEXIS 59771, at *31 (M.D. Ga. Apr. 8, 2019) (citing 6 Wright, Miller & Kane, Federal Practice and Procedure § 1419 (3d ed. 2010) ("Fed. Prac. & Proc.") (citing cases)); Jonathan H. v. Souderton Area Sch. Dist., 562 F.3d 527, 530 (3d Cir. 2009). However, statutes of limitations for permissive counterclaims are generally not tolled by the filing of a complaint. Crawford v. LVNV Funding, LLC, 2016 U.S. Dist. LEXIS 104472, at *19 (M.D. Ala. 2016) (citing Emp'rs Ins. of Wausau v. United States, 764 F.2d 1572, 1576 (Fed. Cir. 1985) ("[A] permissive counterclaim does not generate a like tolling period."); Bonilla v. Trebol Motors Corp., 913 F. Supp. 655, 660 (D.P.R. 1995).

### a.    Compulsory Counterclaims

Rule 13(a), made applicable by Bankruptcy Rule 7013, defines a compulsory counterclaim as any claim that: "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and does not require adding another party over whom the court cannot

---

[3] The discovery rule does not appear to apply to claims under the UCC. Spring Motors Distributors, Inc. v. Ford Motor Co., 191 N.J. Super. 22, 44 (App. Div. 1983).

[4] A compulsory counterclaim is timely asserted so long as it is filed within the time provided by Rule 12(a) for serving a responsive pleading. Bibb Cnty., 2019 U.S. Dist. LEXIS 59771, at *4 n.4.

acquire jurisdiction." Fed. R. Civ. P. 13(a). A permissive counterclaim is "any claim that is not compulsory." Fed. R. Civ. P. 13(b). "By and large, the courts have refrained from making any serious attempt to define the transaction-or-occurrence concept in a highly explicit fashion." 6C Fed. Prac. & Proc. Civ. § 1410. Instead, courts have adopted standards by which the compulsory or permissive nature of specific counterclaims can be determined. The Third Circuit test is whether there is any logical relationship between the claim and the counterclaim. Xerox Corp. v. SCM Corp., 576 F.2d 1057 (3d Cir. 1978). 6C Fed. Prac. & Proc. § 1410 (citing cases); see also Compulsory Counterclaims – The Transaction or Occurrence Requirement: The Standard, 6 Fed. Prac. & Proc. § 1410; Metro. Life Ins. Co. v. Kubichek, 83 F. App'x 425, 430 (3d Cir. 2003) (citing Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc., 292 F.3d 384, 389–90 (3d Cir. 2002)). As explained by the Third Circuit, "[f]or a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" Transamerica 292 F.3d at 389 (quoting Xerox, 576 F.2d at 1059). Claims are logically related if they contain: "(1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between parties." CertainTeed Corp. v. Nichiha USA, Inc., 2009 WL 3540796, at *3 (E.D. Pa. Oct. 29, 2009) (quoting Zelenkofske Axelrod Consulting, L.L.C. v. Stevenson, 1999 WL 592399 (E.D. Pa. Aug. 5, 1999) (quoting Xerox, 576 F.2d at 1059)); Transamerica 292 F.3d at 389; Hytera Commc'ns Corp. Ltd. v. Motorola Sols., Inc., 2018 WL 7108018, at *2 (D.N.J. Dec. 6, 2018); JSM at Tingley, LLC v. Ford Motor Co., 2011 WL 6934852, at *7 (D.N.J. Dec. 30, 2011). In short, the objective of Rule 13(a) is to promote judicial economy, so the terms "transaction or occurrence" are interpreted broadly to further that end. Hytera, 2018 WL 7108018, at *2; JSM, 2011 WL 6934852, at *7.

As described above, Topoint's claims against Henghe include: (Count 1) conversion of assets in the form of solar panels possessed by Solergy; and (Count 3) unjust enrichment to the extent that Henghe profited from the solar panels. Dkt. No. 27. Henghe's Answer includes allegations that the solar panels were not stolen, but transferred to it as part of the Contracts, and that Solergy has breached the terms and warranties under the Contracts. Dkt. No. 74. The counter claims and third party claims Henghe seeks to bring are: (1) declaratory judgment that the Contracts are valid and enforceable; (2) breach of contract against Solergy and Topoint, to the extent Topoint has been assigned the rights under the Contracts; (3) breach of implied covenant of good faith and fair dealing under the Contacts, against Solergy and Topoint, to the extent Topoint has been assigned the rights under the Contracts; (4) fraudulent transfer of Solergy's claim against Henghe; and (5) indemnification and contribution against Solergy and Topoint, to the extent Topoint was assigned rights under the Contracts. Dkt. No. 142.

Determining whether Henghe is liable for conversion of the solar panels will necessarily involve consideration of the validity and terms of the Contracts, including any rights and remedies that Henghe may have under the Contracts for breaches committed by Solergy as well as for any contribution and indemnification. The Court would need to determine the same factual and legal issues in deciding whether to issue a declaratory judgment on the validity and enforceability of the Contracts, as well as to determine whether Solergy breached the Contracts, and if so, whether Solergy was liable to Henghe for any such breaches. Therefore, under the Third Circuit test, counterclaims (1) – (3), and (5) would involve overlapping factual and legal issues and are compulsory. See Transamerica, 292 F.3d at 189. As such, the statutes of limitations for those counterclaims were tolled until at least the date Henghe filed its Answer.

The fourth counterclaim, for fraudulent transfer of Solergy's rights against Henghe however, is not compulsory. Henghe quotes section 25:2-25 of the New Jersey fraudulent transfer

statute, which states that to bring an action for fraudulent transfer, the party must establish that the

debtor (in this case Solergy) made the transfer: (1) "with actual intent to hinder, delay or defraud

any creditor;" or (2) without receiving reasonably equivalent value and the debtor either:

> (a)    Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (b)    Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. 25:2-25. Establishing any of these elements requires the Court to consider the intent of

Solergy's management, the financial well-being of Solergy, and the potential value of both

Topoint's claims against Solergy and Solergy's claims against Henghe. These factual and legal

issues do not overlap with the issues discussed above. Determination of the fraudulent transfer

claim would not require the Court to consider any facts regarding the validity of the Contracts, or

any of the other factual or legal issues necessary to determine whether Henghe is liable for

conversion of the solar panels to Solergy. Moreover, a claim for fraudulent transfer resulting from

Solergy's transfer of its cause of action to Topoint is not an offshoot, or otherwise related to the

same basic cause of action at issue - the alleged conversion of solar panels by Henghe. For these

reasons, the fraudulent transfer claim is not compulsory, and the statute of limitations did not toll

upon the filing of the Initial Complaint.

In this case, the Assignment occurred on December 18, 2014. Therefore, because the

fraudulent transfer claim is only a permissive counterclaim, the statute of limitations was not tolled

and the four-year statute of limitations on that claim would have expired on December 8, 2018.

Therefore, the fraudulent transfer claim is time barred.

As noted, since the remaining counterclaims raised by Henghe are compulsory

counterclaims, the statutes of limitations for these were tolled until Henghe filed its Answer, and

would be timely if raised in the Answer. However, Henghe also failed to raise any of these claims in its Answer and is now seeking to amend that Answer more than two years later. See Dkt. No. 74. As such, regardless of whether the statutes of limitations for these claims was tolled initially, these claims can only be considered timely if they relate back to the Answer.

### 2.    Relation Back

Rule 15(c) allows for amendments to relate back to an original pleading under certain conditions. Henghe initially argued that its "original pleading" should be considered its Motion to Dismiss, filed on January 11, 2017, rather than its Answer, filed on May 7, 2019. However, a pleading is a defined term under Rule 7(a), made applicable by Bankruptcy Rule 7007, and a motion to dismiss is not included in that definition. Fed. R. Civ. P. 7(a); see also Bigelow v. RKO Radio Pictures, Inc., 16 F.R.D. 15, 16 (N.D. Ill. 1954); Canadian Overseas Ores Ltd. v. Compania de Acero Del Pacifico S.A., 528 F. Supp. 1337, 1343 (S.D.N.Y. 1982), aff'd, 727 F.2d 274 (2d Cir. 1984).[5] Therefore, the Answer is the "original pleading," to which Henghe's amendment must relate back. Finally, an omitted counterclaim can relate back to the filing of an answer. In re OLYMPIA BREWING Co. Sec. Litig., 1985 U.S. Dist. LEXIS 23444, at *17 (N.D. Ill. Jan. 14, 1985) (citing Banco Para El Comercio Exterior de Cuba v. First Nat'l City Bank, 744 F.2d 237, 243 (2d Cir. 1984) (counterclaim amended pursuant to Rule 13(f) may relate back to the date of the original answer when the counterclaim arises out of the same transaction that was pleaded in the answer and there is no prejudice to the opposing party's ability to defend the merits of the counterclaim)).[6]

---

[5] Henghe's supplemental brief concedes that a motion cannot be a pleading under the Rules. Dkt. No. 159. But Henghe argues that the Motion to Dismiss can still serve as notice to parties of the claims it intends to bring. Id.

[6] "Rule 13(f) was deleted as largely redundant and potentially misleading. An amendment to add a counterclaim will be governed by Rule 15. Fed. R. Civ. P." Notes of Advisory Committee on 2009 amendments.

Rule 15(c) specifies "[a]n amendment relates back to the date of the original pleading" when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom the claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> >
> > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Feldman v. Am. Asset Fin., LLC, 534 B.R. 627, 636 (E.D. Pa. 2015) (quoting Fed. R. Civ. P. 15(c)). Rule 15(c)(1)(B) allows an amendment to assert a claim, if the "amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out . . . in the original [pleading]." Id. at 637 (emphasis added). The appropriate question to ask is whether there is a "common core of operative facts uniting the original and newly asserted claims." Id. (quoting Mayle v. Felix, 545 U.S. 644, 659 (2005)). However, "Rule 15(c) is not merely an 'identity of transaction test,' such as the rules governing joinder of claims or parties." Glover v. F.D.I.C., 698 F.3d 139, 145–46 (3d Cir. 2012) (citing 6A Fed. Prac. & Proc. § 1497). "[I]t is well-established that the touchstone for relation back is fair notice, . . . Rule 15(c) is premised on the theory that 'a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide.'" Id. (quoting Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 149 n.3 (1984)). Thus, only where the opposing party is given "fair notice of the general fact situation and the legal theory upon which the amending party proceeds"

will relation back be allowed. Id. Conversely, amendments "that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." Id. When relation back is required to satisfy the statute of limitations, the burden is on the party to prove that Rule 15(c) is satisfied. Covey v. Assessor of Ohio Cnty., 666 F. App'x 245, 248 (4th Cir. 2016). Therefore, the Court must determine whether the claims raised in the Proposed Counterclaim are timely, and if not, whether they relate back to the Answer.

a.      <em>The Fraudulent Transfer Claim</em>

Even if the fraudulent transfer claim was treated as a compulsory counterclaim, it would still be time-barred because it does not relate back to the allegations in the Answer.

Henghe brought this claim under N.J.S.A. 25:2-20. Dkt. No. 142. Topoint argues that this claim is barred by New Jersey's statute of repose, as well as its statute of limitations. The distinction is that "[s]tatutes of limitations, but not statutes of repose, are subject to equitable tolling . . . . CTS Corp. v. Waldburger, 573 U.S. 1, 9 (2014). Courts in New Jersey have found that N.J.S.A. 25:2-31 "does not preclude the possibility of relation back" if the proper conditions are met. MSKP Oak Grove, LLC v. Venuto, 2014 WL 4385979, at *5 (D.N.J. Sept. 5, 2014) (citing GS Partners, L.L.C. v. Venuto, 2014 WL 1660586, at *1 (N.J. App. Div. Apr. 28, 2014)). This Court agrees and will treat N.J.S.A 25:2-31 as a statute of limitations rather than a statute of repose in this case.

Here the transfer in question occurred on December 8, 2014. Dkt. No. 142. Henghe filed its Answer on May 7, 2019. Dkt. No. 74. Because the this was not a compulsory counterclaim, the statute of limitations was not tolled, and the claim is time barred. However, even assuming the statute of limitation was tolled, it would only be timely if it related back to the Answer. An amendment only relates back to an original pleading if the "facts alleged and relief sought arose

14

out of the conduct, transaction or occurrence set out . . . in the original [pleading]." Feldman, 534

B.R. at 637 (E.D. Pa. 2015).

As discussed above, the only portion of the Answer related to a claim for fraudulent transfer

is affirmative defense (21) "Plaintiff's claims are barred by virtue of its beneficial transfer and

unlawful assignment of interests and/or assets of Solergy USA, LLC." Dkt. No. 74. There are no

additional factual allegations, just a bare legal conclusion that the Assignment is unlawful. The

factual allegations in the Answer deal exclusively with the Contracts. The Answer does not

reference fraud, nor is there any reference that (a) Solergy was insolvent, (b) the motivation for

the Assignment was suspect or improper, or (c) any other facts required to establish elements of a

fraudulent transfer claim. Therefore, the allegations in the Answer were not sufficient to put

Topoint or Solergy on notice that Henghe intended to litigate these issues. Henghe also argues that

it gave notice of the proposed claims in its Motion to Dismiss. However, as Henghe acknowledged,

a motion to dismiss is not a pleading, and therefore the claims cannot "relate back" to the Motion

to Dismiss.[7] As such, the fraudulent transfer claim does not relate back and is untimely. For this

additional reason, the Motion is denied as to the fraudulent transfer claim.

*b.    Successor Liability*

As discussed earlier, Henghe also proposes to bring claims against Topoint for: (2) breach

of contract, including breach of warranty; (3) breach of implied covenant of good faith and fair

dealing; and (5) contractual indemnification. Each of these requires the Court to find that Topoint

breached a contract with Henghe. Because there is no allegation that Topoint ever entered into a

---

[7] Even assuming this argument was valid, the Motion to Dismiss would not have put a party on notice of Henghe's intent to bring these claims. Although the assignment is referenced in the Motion to Dismiss, there do not appear to be any allegations related to Solergy's motive for doing so, nor that Solergy was insolvent or anything else which would put a party on notice of a fraudulent transfer claim.

contract with Henghe, Henghe must establish that Topoint is liable as a successor to Solergy in order for these claims to survive.

The well-recognized general rule of successor liability under New Jersey law provides that: "where one company sells or otherwise transfers all its assets to another company[,] the latter is not liable for the debts and liabilities of the transferor." Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 765 (D.N.J. 2013) (citing Portfolio Fin. Serv. Co. v. Sharemax.com, Inc., 334 F. Supp. 2d 620, 624 (D.N.J.2004)). Four exceptions to this general rule have been recognized under New Jersey law:

> (1) If the parties have an express or implied agreement that the transferee will assume the liabilities of the transferor; (2) if the transferee was a "mere continuation" of the transferor; (3) if there was a "de facto consolidation or merger" of the companies; or (4) if the transfer was fraudulent.

Id. (quoting In re Victor Int'l, Inc., 278 B.R. 67, 84 n.23 (Bankr. D.N.J. 2002)). In instances of corporate merger or consolidation, the surviving entity becomes liable for the joint obligations of both corporations, even those liabilities which are considered to be contingent, when the two corporations cease to independently exist. Id. (citing Portfolio Fin., 334 F. Supp. 2d at 624). However, in instances of corporate acquisition, when a company acquires another corporation and the target continues to operate as a separate entity, the purchasing corporation will not assume the liabilities of the acquired corporation unless it expressly agrees to do so. Id.

The Proposed Counterclaim does not allege an express or implied agreement, that Topoint is a mere continuation of Solergy, or that this was a defacto merger.[8] However, the Proposed

---

[8] Henghe argues that it sufficiently pled successor liability, citing ¶¶ 62, 63, 72, 73, 81, 82, 98, and 99 of the Proposed Counterclaim. Each of these paragraphs repeats the same conclusory allegations "To extent that the Assignment is later deemed valid and enforceable, then Plaintiff is standing in the shoes of Solergy and is a successor in interest." Dkt. No. 157 (citing Dkt. No. 142). Paragraph 92 is the only exception, alleging "[u]pon information and belief, the Assignment constituted substantially all of Solergy's assets." Id. (citing Dkt. No. 142). None of these sufficiently plead allegations to support a claim of de facto merger.

Counterclaim does allege that the Assignment constituted all of Solergy's assets and, further, that the Assignment was fraudulent, which Henghe argues would satisfy the pleading requirements. Dkt. No. 142. However, as discussed above, the fraudulent transfer claim is time barred, and a party cannot premise successor liability upon a rejected fraudulent transfer claim. See Miller v. Forge Mench P'ship, 2005 U.S. Dist. LEXIS 1524, at *21 (S.D.N.Y. Jan. 31, 2005) (because plaintiff's fraudulent conveyance claims have already been rejected, the last condition cannot require the imposition of successor liability). As such, Henghe has not successfully stated a claim for successor liability.

Henghe argues that in New Jersey, "(a) fifth exception, sometimes incorporated as an element of one of the above exceptions, is the absence of adequate consideration for the sale or transfer." Ramirez v. Amsted Indus., Inc., 86 N.J. 332, 341 (1981) (quoting McKee v. Harris-Seybold Co., Div. of Harris-Intertype Corp., 109 N.J. Super. 555, 560 (Law Div. 1970), aff'd, 118 N.J. Super. 480 (App. Div. 1972), and abrogated by Ramirez v. Amsted Indus., Inc., 86 N.J. 332 (1981)). As such, Henghe argues that the Proposed Counterclaim makes sufficient allegations to establish successor liability under one of the other exceptions. Specifically, Henghe argues that its amended answer raises affirmative defenses, including "Plaintiff's claims are barred by the failure of consideration and because Plaintiff is not a holder in due course." Dkt. No. 159 (citing Affirmative Defenses 20 and 24).

Initially, the Court was not able to find, and Henghe did not provide, any cases in New Jersey or elsewhere, in which lack of adequate consideration, without any further allegations related to fraudulent transfer or de facto merger, was sufficient basis on which to bring a claim for successor liability. Moreover, even assuming that Henghe is correct, the two affirmative defenses referenced by Henghe are not sufficient to properly allege a claim for successor liability under any of the exceptions. Neither of the referenced affirmative defenses contain any factual allegations,

but are bare legal conclusions. See Dkt. No. 142. "Courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness." In re Davids, 2012 WL 6597770, at *3 (Bankr. W.D. Pa. Dec. 18, 2012) (citing Burlington Coat Factory, 114 F.3d at 1429). Additionally, it is not readily apparent that either of these paragraphs reference Solergy's assignment of its claims to Topoint. In fact, these paragraphs appear to refer to the consideration paid for the solar panels, not to the Assignment. Therefore, the Court finds that the Proposed Counterclaim fails to state a claim for successor liability. As such, each of the contract claims Henghe is attempting to bring against Topoint would fail as a matter of law, because Topoint was not a party to the Contracts. Therefore, the Motion is denied as to: (2) breach of contract, including breach of warranty; (3) breach of implied covenant of good faith and fair dealing; and (5) contractual indemnification.

### c.    *Declaratory Judgment*

The last proposed claim is for declaratory judgment. Henghe seeks a determination of the validity of the Contracts, which it maintains forms the basis of its obtaining the solar panels. This claim does not involve successor liability, and the only question before the Court is whether the Contracts are valid and enforceable. Therefore, it is not necessary to find Topoint to be subject to successor liability in order for this claim to be brought. As such, the question is whether this claim is timely or relates back to the Answer.

Because the declaratory judgment claim relates to a contract, it is subject to a six-year statute of limitations under New Jersey law. See Yerkes v. Weiss, 2018 WL 1558146, at *5 (D.N.J. Mar. 29, 2018) (citing N.J.S.A. 2A:14–1); ACE Am. Ins. Co. v. Old Republic General Ins. Corp., 2020 WL 40005, at *2 (App. Div. Jan. 3, 2020). Generally, the statute of limitations begins to run when the cause of action accrues, meaning the date on which the right to file suit arose. ACE Am.

Ins. Co. v. Old Republic Gen. Ins. Corp., 2020 WL 40005, at *2 (N.J. Super. Ct. App. Div. Jan. 3,

2020) (citing Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 394 (2016)). "When a plaintiff has

knowledge of the facts regarding an injury and fault giving rise to a cause of action, the limitations

period commences." Id. (citing Burd v. N.J. Tel. Co., 76 N.J. 284, 291-92 (1978)). "A plaintiff

need not know the legal effect of those facts, ibid., nor the full extent of its injuries to begin the

clock for calculating the period of limitations." Id. (citing Russo Farms, Inc. v. Vineland Bd. of

Educ., 144 N.J. 84, 115 (1996)).

Topoint alleges that Henghe's contract claims accrued no later than December 22, 2014,

"Henghe was involved with claims pertaining to its alleged theft from Topoint's assignee, Solergy

USA LLC." Dkt. No. 152 Geiger Certification Ex. 4 (memorandum of law insupport of motion to

quash filed by Henghe). Topoint further contends that these claims do not relate back to the original

pleading. However, there is a strong argument that Henghe would not have any need to bring an

action for declaratory judgment until such time as Solergy, or Topoint, repudiated the contract and

claimed Henghe converted the solar panels, rather than purchasing them as part of the Contracts.

In which case, the cause of action would have accrued upon the filing of the Initial Complaint on

December 9, 2016. Dkt. No. 1.

Henghe's Answer was filed on May 17, 2019, which would be within the statute of

limitations, even if the Court adopted the claim accrual date proposed by Topoint of 2014. Further,

as was noted earlier, this is a compulsory counterclaim, and as such, the statute of limitations on

this claim was tolled from the filing of the Initial Complaint in December 2016. Finally, the

Answer makes multiple allegations that the Contracts are valid. Dkt. No. 74. These allegations,

along with Topoint's possession of the Contracts were sufficient to put any reasonable party on

notice that Henghe intended to litigate their legitimacy. Therefore, the declaratory judgment claim

relates back to the Answer and is not barred by the statute of limitations. The Motion is granted as to the claim for declaratory judgment.

3.    Remaining Objections

Topoint's remaining objections are overruled as moot in light of the decision above. Topoint alleges that Henghe failed to state a claim for each of the claims brought in the Proposed Counterclaim. However, this is covered above. Henghe's fraudulent transfer claim may have sufficient allegations, but is time barred. The breach of contract claims fail to state of cause of action against Topoint due to lack of privity. Successor liability is not brought as a separate claim, but cannot succeed without the fraudulent transfer claim, which is time barred. However, Henghe's declaratory judgment action is both timely, and properly alleges a cause of action and so the Motion is granted as to this claim.

B.    Solergy

Finally, the Court turns to whether Henghe may add Solergy as a third-party defendant. The first inquiry is whether the claims brought against Solergy are futile. As noted, Rule 15(c)(1) specifies that, when an amendment seeks to add a party against whom the claim is asserted, it relates back if: (1) Rule 15(c)(1)(B) is satisfied; and (2) within the 120-day period allowed by Rule 4(m), the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

Even assuming Rule 15(c)(1)(B) is satisfied, Henghe has not alleged sufficient facts to show Solergy had actual or constructive notice of the action to satisfy Rule 15(c)(1)(C)(i). See Singletary v. Pennsylvania Dep't of Corr., 266 F.3d 186, 195 (3d Cir. 2001) (for purposes of the

relation back doctrine, notice can be "actual, constructive, or imputed."). "[N]otice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." Id. However, the notice received must be more than notice of the event that gave rise to the causes of action; there must have been notice that the plaintiff instituted the action. Id. (citing Bechtel v. Robinson, 886 F.2d 644, 652 n.12 (3d Cir.1989)). In the Third Circuit, a prospective defendant is held to have received constructive notice of an action under either the shared attorney or identity of interest method. Singeltary, 266 F.3d at 196; Browning v. Safmarine, Inc., 287 F.R.D. 288, 291 (D.N.J. 2012) (citations omitted).

Under the shared attorney method, the court considers whether the attorney's later relationship with the prospective defendant "gives rise to the inference that the attorney, within the 120-day period, had some communication or relationship with, and thus gave notice of the action to, the newly named defendant." Singeltary, 266 F.3d at 196-97. Here, Henghe does not argue nor present any evidence to show Solergy and Topoint shared counsel during the 120-day period after the Complaint was filed. In fact, the Court is not aware of any evidence to suggest the two parties ever had an overlap in counsel.

For the identity of interest method, the inquiry is whether "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." Singeltary, 266 F.3d at 197 (citations omitted). Courts have found an identity of interest when the defendants have an overlap in personnel or share a common business identity. See, e.g., In re Joey's Steakhouse, 474 B.R. 167, 180 (Bankr. E.D. Pa. 2012) (holding identity of interest because one of the named defendants was a principal of the prospective defendant); In re MBC Greenhouse, Co., 307 B.R. 787 (Bankr. D. Del. 2004) (holding identity of interest between named and prospective defendants because they had a parent or

subsidiary relationship and corporate officers in common). Henghe argues Solergy had

constructive notice of the action, but it does not expressly support the assertion with the identity

of interest method. Henghe argues that Solergy had notice for the following reasons: (1) the

Complaint relies upon allegations made by Solergy regarding the parties' contracts; (2) the

Complaint relies upon the assignment agreement, and Henghe attacked its validity in its Answer;

(3) Solergy has a cooperation agreement with Topoint which compels Solergy's involvement in

this matter; and (4) Topoint lists Andy Fei and Alexander Perevalav in its initial disclosures. Dkt.

No. 159. Additionally, Henghe argues that its letter from October 29, 2014, put Solergy on notice

of these claims; however, this letter was sent years prior to the Complaint being filed and the start

of the 120-day period under Rule 4(m). Dkt. No. 162 at 9. Lastly, Henghe argues Solergy had

notice from Henghe's Motion to Dismiss; however, Henghe does not allege the Motion to Dismiss

was addressed to or served upon Solergy, nor is Solergy listed on the certificate of service. Dkt.

No. 7.

Overall, Henghe has not pled sufficient facts to show there was actual notice nor does it

persuasively argue there was constructive notice via the identity of interest methods. It appears the

extent of Topoint and Solergy's relationship is the assignment agreement. There are no allegations

of any overlap in personnel or business identity between the two parties to support the notion that

Solergy and Topoint had such a closely intertwined relationship that notice would be imputed to

Solergy.

Further, even assuming Solergy received notice of the action, it is unreasonable to conclude

Solergy knew or should have known that, absent some "mistake concerning the proper party's

identity" Henghe would have added Solergy as a cross defendant as required by Rule

15(c)(1)(C)(ii). In Krupski v. Costa Crociere S.p.A., the Supreme Court stated Rule 15(c)(1)(C)

"asks what the prospective defendant knew or should have known during the Rule 4(m) period,

not what the plaintiff knew or should have known at the time of filing [his or] her original complaint." 560 U.S. 538, 548 (2010)

In addition, "[w]hen the original complaint and the plaintiff's conduct compel the conclusion that the failure to name the prospective defendant in the original complaint was the result of a fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met." Id. at 553. Henghe mentioned Solergy in its Motion to Dismiss and its Answer but it did not attempt to add Solergy as a party for over five years. See Dkt. Nos. 4, 74. This is not a case of mistaken identity where a plaintiff named the wrong defendant, did not know the identity of the prospective defendant, or misunderstood the legal differences of the named and prospective defendants. Again, even assuming Solergy had notice of the action, it is unreasonable to conclude Solergy "knew or should have known" it would be added as a party "but for a mistake" concerning its identity. See Krupski, 560 U.S. at 548 (emphasis added) (citing Fed. R. Civ. P. 15(c)(1)(C)(ii)). Henghe understood the legal implications of the Assignment and that Topoint's claims against Henghe derived from the Contracts. This is evident from the pleadings and the letter Henghe sent to Solergy on October 29, 2014, where it advised Topoint and Solergy of its potential claims against both parties. See Dkt. No. 162 at 9. Therefore, assuming Solergy had notice of these actions as an unnamed party, it likely determined that Henghe deliberately chose not to name Solergy as a cross defendant based on a fully informed decision, not because there was "a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C)(ii).

Lastly, Henghe argues that Solergy would not be prejudiced by being required to defend itself on the merits and that the Court can take jurisdiction over Solergy and Andy Fei. Dkt. Nos. 159 and 162. For prejudice, the non-movant bears the burden of proof and "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would

have offered had the . . . amendments been timely." <u>Joey's Steakhouse</u>, 474 B.R. at 182 (citing

<u>Bechtel</u>, 886 F.2d at 652). A potential defendant is prejudiced from undue delay if it "must set

about assembling evidence and constructing a defense when the case is already stale." <u>Id.</u> (citing

<u>Curry v. Johns–Manville Corp.</u>, 93 F.R.D. 623, 626 (E.D. Pa. 1982)). Overall, given Henghe's

inability to satisfy the notice and mistaken identity requirements of Rule 15(c)(1)(C) and the

prematurity of this analysis as Solergy has not been heard on the matter, it is not necessary to

determine whether Solergy would be prejudiced.

In conclusion, Henghe fails to satisfy the notice and mistaken identity requirements of Rule

15(c)(1)(C), meaning that it cannot add Solergy as a cross defendant to this adversary proceeding.

### Conclusion

The Motion to Amend is granted, in part, and denied, in part. The Motion is granted as to

Henghe's request to amend its answer to include a claim for declaratory judgment that the

Contracts are valid. The Motion is denied as to all other requests.

Further, the Motion is denied as to Solergy, due to its lack of notice and significant delay

in attempting to add Solergy as a defendant.

Dated: March 30, 2023

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE